UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VARGAS,<br><br>            Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. 2:20-cv-01570-JDP (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 18 & 19 |

     Plaintiff challenges the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") terminating his previously granted Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 18 & 19. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's is denied, and this matter is remanded for further proceedings.

**Standard of Review**

     An Administrative Law Judge's ("ALJ") decision to terminate disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such

1

relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The SSA may terminate disability benefits upon finding that the claimant's condition has medically improved, and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). "To determine whether there has been medical improvement, an administrative law judge (ALJ) must compare the current medical severity of the claimant's impairments to the medical severity of the impairment at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quotations omitted); *see also* 20 C.F.R. § 416.994(b).[1] Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1). There is no presumption of continuing disability; that is, "a disability determination must be made 'on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.'" *Lambert v. Saul*, 980 F.3d 1266, 1276 (9th Cir. 2020) (quoting 42 U.S.C. § 423(f)).

---

[1] The social security regulations prescribe an eight-step framework for determining whether a claimant is no longer disabled. 20 C.F.R. §§ 416.994(b)(5)(i)-(viii).

**Background**

In 2012, plaintiff was found to be disabled and was awarded SSI benefits. Administrative Record ("AR") 149-55. On July 18, 2017, after conducting a continuing disability review, the SSA determined that plaintiff was able to work and issued him a notice of disability cessation. AR 169-72. After his request for reconsideration of that determination was denied, plaintiff appeared and testified at a hearing before an ALJ. AR 33-83, 189-91. On September 6, 2019, the ALJ issued a decision finding that plaintiff was no longer disabled. AR 15-27. Specifically, the ALJ found that:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated November 29, 2012. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: mild mental retardation, mood disorder, oppositional defiant disorder, and learning disorder. These impairments were found to result in the residual functional capacity to perform non-public simple repetitive tasks.

3. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through July 1, 2017. Thus, the claimant's current impairments are the same as the CPD impairments.

4. Since July 1, 2017, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

* * *

5. Medical improvement occurred on July 1, 2017.

* * *

6. After careful consideration of the entire record, the undersigned finds that, beginning on July 1, 2017, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could follow simple instructions. The claimant could have occasional interaction with coworkers and supervisors. The claimant could never interact with the public. The claimant could never engage in intense concentration for more than 1 hour,

3

> without a 5-minute change in focus.  The claimant could not engage in fast pace work.  The claimant might be absent or off tasks 5% of the time, due to anger issues.
>
> * * *
>
> 7. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity.
>
> * * *
>
> 8. Since July 1, 2017, the claimant's impairments has [sic] continued to be severe.
>
> * * *
>
> 9. The claimant has no past relevant work.
>
> * * *
>
> 10. On July 1, 2017, the claimant was a younger individual age 18-49.
>
> * * *
>
> 11. The claimant has at least a high school education and is able to communicate in English.
>
> 12. Transferability of job skills is not an issue because the claimant does not have past relevant work.
>
> 13. Since July 1, 2017, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy.
>
> * * *
>
> 14. The claimant's disability ended on July 1, 2017, and the claimant has not become disabled again since that date.

AR 16-27 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request.  AR 1-3.  He now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

4

**Analysis**

Plaintiff argues that the ALJ erred in four ways: first, that he improperly rejected plaintiff's symptom testimony, ECF No. 18 at 17-22; second, that he improperly credited two consulting medical providers' opinions, *id.* at 22-24; third, that his residual functional capacity ("RFC") analysis is not supported by substantial evidence, in particular because of a conflict with the step-one finding that plaintiff had a marked limitation in interacting with others, *id.* at 27-28; and fourth, that he erred in evaluating a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles, *id.* at 27-30. I agree that the ALJ's RFC analysis is not supported by substantial evidence. Because that error requires remand, I decline to address plaintiff's remaining arguments.

In his RFC determination, the ALJ found that plaintiff was limited to occasional interaction with coworkers and supervisors and could never interact with the public. AR 23. Earlier, at step one of the eight-step framework, the ALJ found that plaintiff was "markedly impaired in his ability to interact with others." AR 17.[2] Plaintiff argues that "[b]y finding that a marked limitation exists [at step one,] the ALJ was compelled to find that [plaintiff] cannot work with co-workers and supervisors on an occasional basis." ECF No. 18 at 28.

The SSA "evaluate[s] the effects of []mental disorder[s] on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2). A "marked limitation" in interacting with others indicates that "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* at § 12.00(F)(2)(d).[3] As the ALJ noted and the Commissioner stresses, "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental

---

[2] Step one involves determining whether the claimant's disability meets or equals any of the listings in 20 C.F.R. 404 Subpart P, Appendix 1. *See* 20 C.F.R. § 416.994(b)(5)(i); *supra* note 1.

[3] A "mild limitation" indicates that independent, appropriate, effective, and sustained functioning is "slightly limited"; "moderate limitations" indicate functioning that is "fair"; and an "extreme limitation" indicates a complete inability to function. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00(F)(2)(b), (c), & (e).

impairments at step [one] of the sequential evaluation process." AR 18; ECF No. 19 at 12; *see also* SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996) ("The mental RFC assessment . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments."). Nevertheless, "the social security terms moderate and marked are [not] fluid"; rather, they are "terms of art, included in various social security regulations, administrative guidelines, and listings, to be used uniformly when determining whether a person is disabled or not." *Moore v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00101-TUC-CKJ, 2022 WL 4233773, at *7 (D. Ariz. Sept. 14, 2022).

While the regulations do not define a precise relationship between the paragraph B mental functional limitations and the RFC, the occasional limitations ascribed to plaintiff ordinarily would correspond with a finding of moderate—rather than marked—limitations. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (finding that a limitation to "'simple routine tasks in a non-public setting, with occasional interaction with coworkers' . . . is consistent with [a doctor's] opinion that [the plaintiff's] social limitations were 'moderate,' rather than mild or marked"); *Jack W. v. Comm'r*, No. 3:19-CV-00507-CL, 2021 WL 879043, at *16 (D. Or. Mar. 9, 2021) (holding that "the RFC limitation to no contact with the public and occasional interaction with supervisors and coworkers did not adequately encompass . . . [the plaintiff's] marked limitations in ability to respond appropriately with supervisors, get along with coworkers, and maintain socially acceptable behavior"); *Sandoval v. Berryhill*, No. CIV 17-0641 JHR, 2018 WL 3429920, at *7 (D.N.M. July 16, 2018) (explaining that "[t]he term 'occasionally,' when used in a RFC, means that the activity or condition occurs at least once up to one-third of an 8-hour workday," and that "a finding of a 'marked' impairment . . . would ordinarily preclude *any* interaction") (some quotations omitted).[4]

---

[4] *See also Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (finding that the plaintiff's "moderate difficulty with social functioning encompassed by the limitation of 'occasional contact with coworkers [and] supervisors'"); *Fowler v. Berryhill*, No. 1:17-CV-01253-EPG, 2018 WL 6111660, at *2 (E.D. Cal. Nov. 21, 2018) (finding that the limitation to "occasional interaction with the general public, coworkers, and supervisors" did not fully adopt medical opinion that the plaintiff had "marked limitations" in interacting with others); *Wofford v.*

The ALJ failed to adequately reconcile this apparent inconsistency.  In support of his conclusion that plaintiff had a marked limitation in interacting with others, the ALJ cited plaintiff's testimony that "he left his last job[] due to anger . . . [,] that he does not seek treatment because he does not want to tell his business . . . [, and that h]e reported anger issues."  AR 17.  He reiterated these findings in the RFC, along with a more thorough accounting of plaintiff's allegations: "his temper is the reason why he cannot work"; "he could perform work until he has an outburst"; "he gets agitated when he cannot do things"; "he gets frustrated with people, family, and friends once per month"; "he does not like bosses"; "he has one friend . . . [whom] he occasionally gets along with."  AR 19-20.  The ALJ then extensively recounted the medical opinion evidence—in particular, the testimony of two non-examining consultative examiners and one consultative examiner who examined plaintiff—and referenced several of their statements that plaintiff's impairments in interacting with others were less serious than those described in his testimony.  AR 21-25.  Nevertheless, the ALJ concluded by rejecting all of the medical opinion evidence on plaintiff's ability to interact, "giv[ing] the claimant's subjective allegations credit[,] and find[ing] marked limitations in [his] ability to interact with others."  AR 25 (noting that the "evidence shows that the claimant was [more] limited than assessed by Dr. Giordano").

Nowhere in this catalogue of evidence does the ALJ explain how he determined that plaintiff can have occasional interactions with coworkers and supervisors "independently, appropriately, effectively, and on a sustained basis" despite also having marked limitations in interacting with others.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).  Indeed, the ALJ's recounting of the medical evidence is almost entirely devoid of the ALJ's own reasoning or

---

*Comm'r of Soc. Sec.*, No. 2:19-CV-0792-WBS-DMC, 2021 WL 765262, at *7 (E.D. Cal. Feb. 26, 2021) (holding that "a limitation to occasional interaction with co-workers" in the plaintiff's RFC adequately encompassed the earlier finding that the plaintiff was "moderately limited in various social interactions"); *Patrick L. v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-01669-CL, 2021 WL 4198208, at *5 (D. Or. Sept. 15, 2021) (remanding an ALJ's decision that dropped the plaintiff's limitations in interacting with others from marked to moderate in a "drug abuse analysis" and correspondingly found that if the plaintiff "stopped the substance abuse . . . [h]e [could] tolerate occasional, brief, and superficial interaction with members of the public," since neither finding was supported by substantial evidence); *Moore*, 2022 WL 4233773, at *7 (holding that the RFC limitations of infrequent contact with coworkers failed to account for an earlier finding of "marked" limitations in interacting with others).

explanation. "[T]he ALJ must provide sufficient reasoning that allows us to perform our own review, because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (internal marks and citations omitted); *see Patrick L. v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-01669-CL, 2021 WL 4198208, at *3 (D. Or. Sept. 15, 2021) ("The ALJ's rationale for why plaintiff's limitations in interacting with others and adapting or managing himself dropped from 'marked' to 'moderate' is severely lacking to the point that it justifies remand.").

Simply put, because the ALJ's RFC determination did not account for his own finding of marked limitations in social function, the ALJ's decision is not supported by substantial evidence. Accordingly, this matter must be remanded for further administrative proceedings. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 18, is granted.
2. The Commissioner's cross-motion for summary judgment, ECF No. 19, is denied.
3. The matter is remanded for further proceedings consistent with this order.
4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated:   March 24, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE